In re the commitment of
Michael L. McGee:

State of Wisconsin,
Petitioner-Respondent,

County of Kenosha,
Intervenor-Appellant-Cross-Respondent,

v.

Michael L. McGee,
Respondent-Respondent-Cross-Appellant.

Court of Appeals

*No. 2016AP1082. Submitted on briefs March 14, 2017.
—Decided May 17, 2017.*

2017 WI App 39

(Also reported in 899 N.W.2d 396.)

415

On behalf of the intervenor-appellant-cross-respondent, the cause was submitted on the briefs of *Jennifer J. Kopp* of *Kenosha County Corporation Counsel's Office*, Kenosha.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *Jefren E. Olsen,* assistant state public defender of Madison.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. REILLY, P.J. The placement of a sexually violent person back into the community is a difficult and thankless task. Wisconsin law requires that a sexually violent person that is suitable for supervised release is to be placed back into their county of residence unless "good cause" is shown to place him or her in another county. In this appeal we address the statutory requirements that a court must comply with before placing a sexually violent person outside of the committing court's county.

¶ 2. Michael L. McGee was committed as a sexually violent person in 2004 by the Racine County Circuit Court. McGee's county of residence is Racine County. Kenosha County learned in May 2016 that Racine County planned to place McGee in Kenosha County. Kenosha County moved to rescind the approved plan to place McGee in Kenosha on the grounds that Kenosha County did not receive statutory notice nor was it allowed the statutory right to participate in McGee's supervised release plan. We agree with Kenosha County and vacate the supervised release plan approved by the Racine County Circuit Court.

*Background*

¶ 3. McGee was convicted in 1987 of second-degree sexual assault and burglary in Racine County after he forcibly entered a stranger's residence, threat-

417

ened her, and raped her while her child was in the home. In 1992, after being released on parole, McGee was charged, again in Racine County, with fourth-degree sexual assault of an adult female acquaintance and first-degree sexual assault of a child. The charges were dismissed; however, McGee's parole was revoked as a result of the charges and he was returned to prison. In anticipation of McGee's release, the Racine County district attorney in 2003 filed a petition under Wis. Stat. ch. 980 (2015–16),[1] seeking a civil commitment to detain McGee as a sexually violent person, which was granted by the court.

¶ 4. A person determined to be a sexually violent person is committed to the custody of the Department of Health Services (DHS) and is required to be initially placed in a secure mental health facility. Wis. Stat. §§ 980.05, 980.06, 980.065. A sexually violent person has the right to petition the court that committed him for "supervised release," which allows a sexually violent person to reside in the community rather than in a secure mental health facility. Wis. Stat. § 980.08(1). The sexually violent person remains in the custody and under the supervision of DHS while on supervised release. *See* § 980.08(6m). The approval process for a supervised release plan involves a comprehensive study of the sexually violent person and the suitability of the proposed residence in the community where the sexually violent person will live.

¶ 5. In order to grant supervised release, the committing court must find that the sexually violent person has met all the criteria under Wis. Stat. § 980.08(4)(cg). McGee petitioned for supervised re-

---

[1] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

lease in November 2013, and for purposes of this appeal, it is undisputed and we accept that McGee met his burden to prove that he was suitable for supervised release under § 980.08(4)(cg). *See* § 980.08(4)(cj).

¶ 6. WISCONSIN STAT. § 980.08(4)(cm) requires that a committing court "shall" select the county of the sexually violent person's residence for placement on supervised release "[u]nless the court has good cause to select another county." The statutes do not define what constitutes "good cause" for placing a sexually violent person in another county. McGee, as a resident of Racine County, was, therefore, required to be placed in Racine County unless the court had "good cause to select another county." *See id.* The Racine County Circuit Court, DHS, and the district attorney of Racine all agreed in June 2015, without an evidentiary hearing, that there was no suitable residence for McGee in all of Racine County because zoning ordinances throughout Racine prohibited the placement of sexually violent persons. *See* § 980.08(4)(cm) (2013–14). In June 2015, the Racine County parties decided that Kenosha County may have a residence for McGee. Kenosha County was not consulted.

¶ 7. In February 2016, the legislature enacted amendments to WIS. STAT. ch. 980 to prohibit a court from making a finding of "good cause" based on local zoning ordinances related to sexually violent persons. WIS. STAT. § 980.08(4)(cm); 2015 Wis. Act 156, § 8 (Act 156).[2] The legislative purpose was to constrain the placement of a sexually violent person outside his or her home county. *See* Wisconsin Legislative Council Act Memo, 2015 Wis. Act 156, Residency Requirements for Sexually Violent Persons (Mar. 14, 2016).

---

[2] Act 156 became effective March 2, 2016.

¶ 8. On April 21, 2016, DHS presented a supervised release plan to the circuit court with a proposed residence for McGee in Kenosha County on Geneva Road in the Town of Wheatland, Wisconsin (the Wheatland property). In a letter to the court, Angie Serwa, supervised release specialist with DHS, represented that the supervised release plan was in compliance with the amended provisions of Act 156. The circuit court signed the order for supervised release on May 4, 2016. On May 18, 2016, Kenosha County filed a motion to intervene and stay enforcement of McGee's supervised release plan. Kenosha County argued that the supervised release plan was approved in contravention of the law as DHS and the circuit court failed to comply with WIS. STAT. § 980.08.

¶ 9. The circuit court granted Kenosha County's motion to intervene and scheduled an evidentiary hearing. Additional investigation revealed that the Wheatland property was within 1500 feet of a Kenosha County bike trail and near a fishing area, both of which are frequented by children and families. The Wheatland property was also adjacent to a residence that included a one-year-old male child. McGee's sex offender special bulletin notice explicitly states that his "[t]argeted victims" are "[a]dult females; prepubescent males." This information was not conveyed to the court in the supervised release plan that DHS presented for approval. The day before the hearing, the Racine County district attorney, for the first time, sent a letter to the court objecting to the supervised release plan, explaining that it "was not informed that the proposed placement was adjacent to a residence with a one-year-old child" and that it did not "believe that the plan meets the safety needs of the community."

¶ 10. The circuit court issued a written decision denying Kenosha County's motion to stay enforcement and concluded that the supervised release plan was appropriate for McGee at the Wheatland property. The court ordered McGee placed by DHS within ten days of the decision. Kenosha County appeals.[3] McGee cross-appeals, challenging the circuit court's decision granting Kenosha County's petition to intervene in the supervised release proceeding.

## *Analysis*

¶ 11. At the heart of this dispute is whether Kenosha County and others within Kenosha County were provided proper notice that McGee was to be placed within its borders and given an opportunity to be involved in the supervised release plan. Safety is a paramount consideration in the placement of sexually violent persons, *see State v. Burris*, 2004 WI 91, ¶ 36, 273 Wis. 2d 294, 682 N.W.2d 812, and, therefore, compliance with the statutory provisions is critical. We review a circuit court's approval of a supervised release plan under Wis. Stat. § 980.08(4)(g) for an erroneous exercise of discretion. *State v. Thiel*, 2012 WI App 48, ¶ 6, 340 Wis. 2d 654, 813 N.W.2d 709. Statutory interpretation, however, is a question of law we review de novo. *State ex rel. Steldt v. McCaughtry*, 2000 WI App 176, ¶ 11, 238 Wis. 2d 393, 617 N.W.2d 201. As we conclude that DHS and the circuit court

---

[3] Kenosha County filed a motion to stay the decision pending appeal, which the circuit court denied. Kenosha County then filed an ex parte emergency motion to stay with this court, which we granted.

failed to abide by the statutory requirements, we reverse and remand to vacate the approval of McGee's supervised release plan.

■

¶ 12. As an initial matter, we conclude that the circuit court erroneously exercised its discretion in finding "good cause" that Racine County had no residence for McGee. Act 156 clearly altered the grounds for finding good cause, and McGee's supervised release was subject to all of Act 156's amendments. *See* 2015 Wis. Act 156, § 16. The circuit court heard testimony in May 2016 from Dr. Stephen Kopetskie, the court assessment and community programs director at Sand Ridge Treatment Center, that there was no housing available in Racine County, but he also testified that the staff member responsible for conducting searches and "maintaining our residence search log" resigned in February 2016, so "the log is not as well kept as it was previously." The bare assertion, completely undermined by the process upon which it was based, is insufficient to establish good cause. The local ordinances in Racine County were no longer grounds for finding good cause under Act 156 at the time the court approved McGee's supervised release. We conclude that the circuit court erroneously exercised its discretion in finding good cause for placement outside Racine County.

¶ 13. In the event a court does have good cause to select a different county from a sexually violent person's county of residence, the court and DHS are obligated to involve the county of intended placement, its law enforcement, the local government where the proposed placement exists, and others in the preparation of the supervised release plan. Wis. Stat. § 980.08(4)(d)-(f). The court, before approving any su-

pervised release plan that places a sexually violent person outside of the committing county, must notify the district attorney, the law enforcement agency, and the local governmental unit "in the county of intended placement" of the prospective placement of the specific sexually violent person and allow those entities to submit prospective residential options for community placement to DHS within sixty days following the court's selection of the county. Sec. 980.08(4)(d). The committing court is also required to involve the intended county's department that oversees mental health issues[4] with an order to prepare a report, either independently or with DHS, "identifying prospective residential options for community placement." Sec. 980.08(4)(e).

¶ 14. DHS is statutorily required to "consult with a local law enforcement agency having jurisdiction over any prospective residential option identified under [WIS. STAT. § 980.08(4)(e)]" and request a written report. Sec. 980.08(4)(em). The court "shall direct" DHS to use the above noted reports to prepare a supervised release plan "for the person." Sec. 980.08(4)(f). Section 980.08(4)(f) also requires that DHS consult with the "county coordinator of victims and witnesses services in the county of intended placement" prior to submitting its supervised release plan to the court.

¶ 15. Applying the statutory notice requirements to the case at hand, the Racine County Circuit Court, having decided in concert with the Racine County district attorney and DHS to place McGee in Kenosha County, was statutorily required to notify the Kenosha

[4] *See* WIS. STAT. § 51.42.

County sheriff, the Kenosha County district attorney, the Kenosha County department that handles mental health issues under Wis. Stat. § 51.42, and the Town of Wheatland, where McGee was intended to be placed, that the Racine County Circuit Court was to be presented with a plan for approval that would place McGee in Kenosha County. All known and affected Kenosha County entities were entitled to a seat at the planning table in the preparation of the supervised release plan for McGee. The record demonstrates these legislative requirements were not followed.

¶ 16. The court and DHS failed to statutorily notice each of the above noted Kenosha County entities and failed to allow them to participate in the preparation of the supervised release plan for McGee. The court entered an "Order for Supervised Release Plan" on June 22, 2015, which lists Kenosha County as a location for possible placement as "DHS has no housing available in Racine County," but authorized only "[t]he petitioner, his/her attorney, the district attorney, and the following law enforcement agencies and local governmental units in *Racine* county" to submit prospective residential options for community placement. (Emphasis added.) Neither Kenosha County nor the Town of Wheatland were authorized by the court order to submit residential options. The court signed an "Order for the Racine County Department Under Wis. Stat. § 51.42 to Prepare a Residential Plan for Placement Pursuant to Wis. Stat. § 980.08(4)(e)," but the record does not include a similar order for Kenosha County. On January 22, 2016, the court again issued an "Order for Supervised Release Plan," which authorized "[a] report identifying prospective residential options for community placement" under § 980.08(4)(e), but the county listed was "statewide."

¶ 17. At the hearing, Detective David Smith of the Kenosha County Sheriff's Department, who completed a report on the Wheatland property, testified that the report was done with the understanding that the Wheatland property was a possible placement for another sex offender, not McGee, and no one asked him to share his concerns or opinions about the placement of McGee. Kenosha County Sheriff David Beth testified that he was not contacted regarding the suitability of McGee's placement in the Wheatland property, but if he had been, he would have "completely said it was the wrong place to put" him. Heather Beasy, the victim witness coordinator for Kenosha County, testified that she was not notified until May 6, 2016—two days after the order for supervised release was signed by the court—that McGee was going to be released into Kenosha County and she was never provided the names of McGee's victims. *See* Wis. Stat. § 980.08(4)(f). As DHS and the circuit court failed to comply with statutory notice requirements, we find that the circuit court erroneously exercised its discretion.

¶ 18. DHS maintains that they complied with the statutory requirements as they asked law enforcement to share any concerns about the "physical potential placement," meaning the placement of *any* Wis. Stat. ch. 980 offender in the Wheatland property. According to Serwa, "[i]t is not statutorily required for me to request each individual client. I am asking for the residence assessment not the assessment of the resident, the individual." The circuit court agreed with DHS, noting that "the inquiry required of law enforcement and the victim/witness division of the District Attorney's office is only that as it deals with the residence, not the proposed resident." We disagree.

425

¶ 19. By statute, DHS is required to "consult with local law enforcement." WIS. STAT. § 980.08(4)(em). Consult means "to ask advice of" or "seek the opinion of." *Consult,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (3d ed. 1993); *see also Consult,* DICTIONARY.COM, RANDOM HOUSE DICTIONARY (2017), http://www.dictionary.com/browse/consult (last visited Apr. 24, 2017). Section 980.08(4)(em), as well as § 980.08(4)(d) and (e), require more than a formalistic general report on the physical residence slated for placement. Instead, the statute contemplates that DHS will work with local law enforcement and the county entities and seek advice about a proposed placement of a particular sexually violent person in order to draft the supervised release plan. *See* § 980.08(4)(f). The statute requires that DHS and the circuit court furnish Kenosha County and others with information pertaining to the specific sexually violent person slated for release. *See* § 980.08(4)(cm),(d), (f), (g) (referencing "the person" or "the individual").

██

¶ 20. We also conclude that DHS erred when it failed to include information in the supervised release plan pertaining to the one-year-old boy living next door to the Wheatland property. When questioned, Serwa reported that she was "follow[ing] the statutory requirement" under WIS. STAT. § 980.08(4)(f)4. Section 980.08(4)(f)4. provides that the plan will "[e]nsure that the person's placement is into a residence that is not on a property adjacent to a property where a child's primary residence exists" if the individual is a "serious child sex offender." DHS argued that McGee does not meet the definition of a serious child sex offender under WIS. STAT. § 980.01(4m) as he was never *convicted* of sexual assault of a child. The circuit court

agreed that the information concerning the one-year-old boy "is not required" as "McGee does not fall within that class of persons in which placement by [DHS] requires the Court to be informed of children in the prohibited zone."

■

¶ 21. Simply because McGee was not "convicted" of sexually assaulting a child, but rather his parole was revoked, does not mean that the proposed placement next to a child is not relevant to the court's ultimate determination under Wis. Stat. § 980.08(4)(g). The court is the ultimate arbitrator of whether or not the supervised release plan is appropriate as "adequately meet[ing] the treatment needs of the individual and the safety needs of the community." *Id*. We conclude that as McGee's parole was revoked in part for sexually assaulting a child, this information was vital to the court in making a proper legal determination under § 980.08(4)(g).[5]

*McGee's Cross-Appeal*

¶ 22. We next address McGee's cross-appeal questioning whether the circuit court properly allowed Kenosha County to intervene in this case as a matter of right under Wis. Stat. § 803.09(1). We conclude that it did. Section 803.09(1) states:

> Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so

---

[5] For these same reasons, we also conclude that the information concerning the bike trail and fishing pond should have been included in the supervised release plan presented by DHS. *See* Wis. Stat. § 980.08(4)(f)2.

situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.

¶ 23. Under WIS. STAT. § 803.09(1), the party requesting to intervene must meet four criteria: (1) the motion to intervene must be timely; (2) the party must claim an interest sufficiently related to the subject of the action; (3) the party must show "that disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest"; and (4) the existing parties must not adequately represent the movant's interest. *Helgeland v. Wisconsin Municipalities*, 2008 WI 9, ¶ 38, 307 Wis. 2d 1, 745 N.W.2d 1. The criteria, however, "need not be analyzed in isolation from one another, and a movant's strong showing with respect to one requirement may contribute to the movant's ability to meet other requirements as well." *Id.*, ¶ 39. We review a circuit court's decision to allow intervention as of right de novo. *Id.*, ¶ 41.

¶ 24. We agree with the circuit court that Kenosha County satisfied the four criteria for intervention as a matter of right.[6] Kenosha County's interest is directly and sufficiently related to McGee's supervised release, that interest is substantial, and Kenosha County and its residents will be impacted by the outcome of this case. As outlined above, the statute mandates that Kenosha County, as well as its county entities, receive notice of McGee's potential placement in its community, which created an interest in having a meaningful opportunity to be involved in McGee's

---

[6] The parties agree that Kenosha County's motion to intervene was timely.

placement process. WISCONSIN STAT. § 980.08 vests in the county of intended placement an interest in supervised release proceedings as a matter of right; the county has the absolute right to be a party to the action. Kenosha County also "has a substantial interest in the well-being of the residents and property located within its boundaries." *See Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 746, 601 N.W.2d 301 (Ct. App. 1999). We conclude that those interests would be impaired if the court had denied intervention. We agree that under the facts of this specific case, Kenosha County was statutorily entitled to be heard on the issue of McGee being placed in Kenosha County, and we affirm the decision of the circuit court granting Kenosha County's motion to intervene. The Town of Wheatland also moved for intervention, but its motion was denied by the circuit court. Wheatland's motion to intervene should also have been granted for the same reasons we approve of Kenosha's intervention.[7]

## CONCLUSION

¶ 25. We affirm the circuit court's grant of intervention to Kenosha County. We reverse the approval of the supervised release plan as the court erroneously exercised its discretion by failing to comply with WIS. STAT. § 980.08. Accordingly, we reverse and remand to the circuit court to vacate the approved supervised release plan.

¶ 26. No costs to either party.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

---

[7] See the companion case *State v. McGee*, No. 2016AP1068 (released May 17, 2017).